IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELICA QUEZADA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-CV-092-TCK-CDL |
| | ) |
| RONNIE RODEN, individually, KYLE | ) |
| BAKER, individually, CLINTON | ) |
| SCOTT WALTON, a/k/a "SCOTT" | ) |
| WALTON, Sheriff of Rogers | ) |
| County, in his official capacity; | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is the Motion to Dismiss filed by the defendant Ronnie Roden, in his individual capacity (Doc. 14). Plaintiff filed a Response (Doc. 18), and Defendant filed a Reply (Doc. 20).

**I. BACKGROUND**

Plaintiff originally brought her Petition against Ronnie Roden, individually, and Clinton Scott Walton, Sheriff of Rogers County, in his official capacity ("County"), arising out of her arrest on or about October 22, 2019. (Doc. 2-2). Defendants filed their respective Motions to Dismiss, asserting that Plaintiff's Petition fails to plead sufficient facts to state a claim for relief. Plaintiff filed her Amended Complaint in response, and added Lieutenant Kyle Baker ("Baker"), in his individual capacity, as a Defendant. (Doc. 11).[1]

---

[1] Summons was issued to Baker on July 7, 2022. (Doc. 22). Baker has neither filed an Answer, nor otherwise responded.

Plaintiff's Amended Complaint alleges that on October 22, 2019, her husband was arrested and charged with the murder of two individuals at Plaintiff's residence. (Doc. 11, ¶ 14). According to Plaintiff, she "was seen on video obtained by law enforcement not taking part in the shooting and instructing the purported shooter of the firearm to put the gun down," that she "rendered aid to one of the victims," "was obviously distraught" and "no lawful basis existed to support the arrest." (Doc. 11, ¶ 12). Plaintiff alleges she was arrested for accessory to murder, and the "explicit reason for arresting Plaintiff was that she would not speak to authorities upon their arrival," and that she "continued to refuse to cooperate." (Doc. 11, ¶ 14). Plaintiff further contends "false statements of fact and reckless omissions led to the arrest and unlawful detention[.]" (Doc. 11, ¶ 12). According to Plaintiff, she was "arrested, taken to the Rogers County jail," had to retain an attorney, post bond and sustained damages. (Doc. 11, ¶ 16). The charges against Plaintiff were dismissed on or about January 27, 2020. (Doc. 11, ¶ 16; Doc. 2-4).

Regarding Sergeant Roden, Plaintiff alleges he "was the lead investigator and directed that Plaintiff be arrested[]" and that "Roden had no probable cause to direct Plaintiff to be arrested." (Doc. 11, ¶¶ 3, 15). Concerning Lieutenant Baker, Plaintiff alleges he "arrested the Plaintiff and also submitted a probable cause affidavit that led to the filing of charges," and that "Baker lacked probable cause as well." (Doc. 11, ¶ 15). Plaintiff then asserts that she was arrested "in retaliation for Plaintiff not answering questions, which is her constitutional right" (Doc. 11, ¶ 11), and that "Roden and Baker acted with reckless indifference to federally secured constitutional rights of the Plaintiff." (Doc. 11, ¶ 18).

Plaintiff's Amended Complaint alleges five (5) claims against Roden in his individual capacity: (1) False Arrest in violation of 42 U.S.C. § 1983; (2) Malicious Prosecution in violation of 42 U.S.C. § 1983; (3) Retaliation in violation of 42 U.S.C. § 1983; (4) Abuse of Process; and

(5) a False Arrest claim premised on state law. For the reasons set forth below, the Court finds Plaintiff fails to state a claim for relief against Roden, and Roden is entitled to qualified immunity.

## II. MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In a 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations" and construe the allegations most favorable to the claimant. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id*. A complaint is facially plausible where it sets forth sufficient facts to allow the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 556 (2007)). The court must determine "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[]" to state a claim for which relief may be granted. *Iqbal,* 556 U.S. at 667 (citing *Twombly*, 550 U.S. at 540). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Where the court cannot infer more than a mere possibility of misconduct, accepting as true all of a plaintiff's well-pleaded factual allegations,

3

"the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Section 1983 Individual Liability

Plaintiff brings her section 1983 claims against Roden individually, but considering the facts alleged in the light most favorable to the Plaintiff, she has failed to show Roden's conduct violated a constitutional right actionable under section 1983.[2] *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010).

Section 1983 provides a federal civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting under color of state law. *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011) (quoting 42 U.S.C. § 1983). "The analysis in a § 1983 case begins with the identification of the precise constitutional right allegedly infringed." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "Thus, [the Court] must examine the allegations in the complaint as to each individual to determine whether a plausible claim for relief is stated." *Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013). But, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

---

[2] Plaintiff's Petition does not specify Roden's liability is premised on supervisory liability under section 1983. The Petition does not allege Roden was a supervisor or promulgated, created, implemented, or possessed personal responsibility for the continued operation of any policy. (Doc. 11). As such, section 1983 liability against Roden must be premised on personal involvement. To the extent Plaintiff's claims against Roden are premised on supervisory liability, they also fail. (Doc. 18 at 3-4); see also *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) ("To establish a violation of § 1983 by a supervisor, 'the plaintiff must establish a deliberate, intentional act' on the part of the defendant 'to violate the plaintiff's legal rights.'") (quoting *Serna v. Colo. Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir.2006).

4

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "In addition to alleging a constitutional violation, a § 1983 plaintiff must prove other tort elements." *Connick*, 563 U.S. at 60 (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007)). The defendant must also possess a "sufficiently culpable state of mind." *Hutto v. Davis*, 972 F. Supp. 1372, 1376 (W.D. Okla. 1997).

**1. Plaintiff Fails to Allege Sufficient Facts of Roden's Personal Involvement.**

To state a claim against Roden under section 1983, Plaintiff must allege facts to show his personal involvement in the alleged constitutional violation. The only allegation of fact Plaintiff makes of Roden's involvement is that Roden "was the lead investigator and directed that Plaintiff be arrested." (Doc. 11, ¶ 15). Roden's status as the "lead investigator" in the murder investigation, even if true, is insufficient to show his personal involvement, as it is not an allegation of any affirmative act of Roden. See *Novitsky*, 491 F.3d at 1254 (requiring that the defendant have "personally participated" in the constitutional deprivation and holding that mere presence at the scene was insufficient).

Plaintiff does allege Roden "directed that Plaintiff be arrested . . . without probable cause[.]"[3] (Doc. 11, ¶ 15). However, Plaintiff's First Amended Complaint does not expound on that allegation. Plaintiff does not allege who Roden allegedly "directed" to arrest Plaintiff, nor how. Plaintiff does not allege Roden had any physical interaction with Plaintiff. Plaintiff does not allege Roden took part in writing the Probable Cause Affidavit ("Affidavit"), that he told Baker to

---

[3] Courts have held that "proof" or "showing" a "defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance" is sufficient to hold an individual supervisor liable under section 1983. *Dodds*, 614 F.3d at 1196. However, the single conclusory allegation that Roden "directed" the arrest of Plaintiff falls short of "showing" Roden was personally involved. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) ("the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'").

5

misrepresent or omit information in the Affidavit, or that he was involved in any way in the prosecution of Plaintiff. Roden cannot be held vicariously liable for the acts of other officers. Yet Plaintiff's sole allegation of Roden's personal involvement, without any specificity, is an attempt to hold Roden liable for the alleged conduct of others. This single conclusory allegation is not sufficient to prove Roden's personal involvement for a section 1983 claim.

**2. Plaintiff Fails to Allege Roden Violated her Constitutional Rights.**

Plaintiff also fails to state a section 1983 claim against Roden because she has failed to allege sufficient facts to show her constitutional rights were violated, and done so by Roden. "The analysis in a § 1983 case begins with the identification of the precise constitutional right allegedly infringed." *Connick*, 563 U.S. at 60. Here, however, Plaintiff does not reference the Fourth Amendment right to be free from unreasonable seizures or the Fourteenth Amendment right to due process, despite these being the rights that are generally implicated in false arrest and malicious prosecution claims premised on lack of probable cause.[4] Instead, the only rights Plaintiff explicitly invokes are rights "protected by the First Amendment." (Doc. 11, ¶ 29). Therefore, Plaintiff's First Amended Complaint fails to sufficiently allege a constitutional violation.

While the First Amendment "not only protects an individual's right to speak, it also protects an individual's right not to speak." See *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011). However, no such First Amendment "right to refuse to answer questions" asked by police during an active investigation exists. See *Id.* at 1244 ("we again have found no authority recognizing a First Amendment right to refuse to answer questions during a *Terry* stop."); see also, *Albright v. Rodriguez*, 51 F.3d 1531, 1539-40 (10th Cir. 1995) (finding no First Amendment

---

[4] See *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004); *Taylor v. Meacham*, 82 F.3d 1556, 1556-60 (10th Cir. 1996).

protection for refusing to identify oneself to a police officer during investigation.). Accordingly, it is not clearly established that Plaintiff has protection under the First Amendment to refuse to answer questions posed by a police officer during the course of an ongoing investigation of a crime she witnessed and where she was not under arrest at the time. *Id*.

Moreover, it is unsettled whether her pre-arrest, pre-*Miranda* silence during the course of an ongoing investigation of a crime in which she was a witness and directly involved, is protected under the Fourth or Fifth Amendment.[5] See *Koch*, 660 F.3d at 1242-45. While the Fourth Amendment "cannot require a suspect to answer questions," it does not prohibit arresting an individual when she refuses to answer questions and police are aware of additional information of her direct involvement in prompting the crime. *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S. 177, 187 (2004); *Bostick,* 501 U.S. 429, 437 (1991). Here, Plaintiff's refusal, particularly in the face of other eyewitness cooperation, would reasonably increase the suspicion of the officer that her refusal might be the result of her complicity in the crime, or attempt to hide evidence.[6]

---

[5] *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (In the context of the Fourth Amendment, "[w]e have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); *Salinas v. Texas*, 570 U.S. 178, 189 (2013) ("To be sure, someone might decline to answer a police officer's question in reliance on his constitutional privilege. But he also might do so because he is trying to think of a good lie, because he is embarrassed, or because he is protecting someone else. Not every such possible explanation for silence is probative of guilt, but neither is every possible explanation protected by the Fifth Amendment."); *United States v. Chimal*, 976 F.2d 608, 611 (10th Cir. 1992) ("It is well-established that a prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility.") (citing *Jenkins v. Anderson*, 447 U.S. 231, 238, 240 (1980) (holding that impeachment by use of pre-arrest silence does not violate Fifth or Fourteenth Amendments)). *District of Columbia v. Wesby*, 138 S. Ct. 577, 587–588 (2018) ("suspect's untruthful and evasive answers to police questioning could support probable cause.")).

[6] See *Illinois v. Gates*, 462 U.S. 213, 243-44, n. 13 (1983) ("Innocent behavior will frequently provide the basis for a showing of probable cause.").

Even if Plaintiff had such a right to refuse to cooperate, Plaintiff does not allege that she invoked or stated any such privilege afforded by these Amendments when police questioned her. The Supreme Court has spoken directly to this issue in *Salinas*.[7] Moreover, "[t]he Supreme Court has not 'clearly established' that pre-arrest silence may not be used to establish guilt[]", as discussed *infra* with regard to qualified immunity. *Moore v. Patton*, No. 12-CV-0255- CVE-FHM, *4 (N.D. Okla. Apr. 13, 2015) (citing *Carter v. Ward*, 347 F.3d 860, 863–64 (10th 8 Cir. 2003) (stating that "the Supreme Court has not yet ruled on whether pre-*Miranda* or prearrest silence . . . is protected by the Fifth Amendment so as to proscribe its use by the prosecution on the issue of guilt."). Merely stating that Plaintiff was arrested without probable cause and for refusing to cooperate with police is insufficient to allege a violation of her constitutional rights.

### 3. Plaintiff Fails to Allege Sufficient Facts to Negate Probable Cause.

To state a claim for relief under section 1983 premised on an arrest without probable cause, Plaintiff must allege sufficient facts to vitiate probable cause.[8] "A warrantless arrest is permissible

---

[7] "The privilege against self-incrimination is an exception to the general principle that the Government has the right to everyone's testimony", but "a witness who desires the protection of the privilege . . . must claim it at the time he relies on it." *Salinas*, 570 U.S. at 183. "The express invocation requirement also gives courts tasked with evaluating a Fifth Amendment claim a contemporaneous record establishing the witness' reasons for refusing to answer." *Id*. at 183-184. "Our cases establish that a defendant normally does not invoke the privilege by remaining silent." *Id*. at 186. "A witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim." *Id*. at 189.

[8] See *Roddy v. Suarez*, 405 F. Appx. 294, 295 (10th Cir. 2010) (holding claim for false arrest under section 1983 precluded by probable cause to support arrest.); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) ("[M]alicious prosecution requires proving the want of probable cause.") (internal marks omitted); *Hall v. Burke*, 12 F. Appx. 856, 861-862 (10th Cir. 2001) ("The question of probable cause must be determined before it can be decided whether the defendants breached their duty to intervene to prevent unconstitutional conduct."); *Nieves*, 139 S. Ct. at 1724 ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1147 (10th Cir. 2020), cert. denied, 142 S. Ct. 111, 211 L. Ed. 2d 33 (2021) (dismissing claim for malicious abuse of process "because [plaintiff] cannot show the criminal complaint was unsupported by probable cause.").

when an officer 'has probable cause to believe that a person committed a crime.'" *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)). To determine "whether an officer had probable cause for an arrest, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby*, 138 S. Ct. at 586. Although the issue of whether probable cause existed is generally an issue for the jury, courts may dismiss claims for lack of probable cause when arguable probable cause is presented in the petition.[9]

Probable cause "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (citation omitted). "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011). Importantly, the Supreme Court has stated that "innocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates*, 462 U.S. at 243- 44, n. 13.

---

[9] *Mocek v. City of Albuquerque*, 813 F.3d 912 (10th Cir. 2015) (affirming the district court's dismissal of the plaintiff's lawsuit for failure to state a claim because "arguable probable cause" was present to arrest the plaintiff for refusing to identify himself to police.); *Coburn v. Nordeen*, 72 F. Appx. 744 (10th Cir. 2003) (affirming the district court's dismissal of plaintiff's lawsuit for failure to state a claim because the plaintiff's conclusory allegations were insufficient to vitiate probable cause.).

As it pertains to Plaintiff, the Affidavit states that police knew at the time: (1) Plaintiff's daughter called 911 to report an altercation occurred wherein Plaintiff's husband shot the two victims; (2) Plaintiff was an eyewitness and the shooter's wife; (3) eyewitnesses told officers Plaintiff was "standing mere feet away during the entire series of events"; (4) eyewitnesses told officers Plaintiff "was at least verbally engaged with the victims"; (5) eyewitnesses told officers Plaintiff "prompt[ed] [the shooter] to join the altercation"; (6) Plaintiff's daughter, the 911 caller, said of Plaintiff "you both are going to jail"; and (7) when "Deputies" inquired to Plaintiff about what she knew and observed, given all the information above, Plaintiff "refused to cooperate", despite not being under arrest at the time. (Doc. 2-4). Considering this information known to officers prior to Plaintiff's arrest, officers would have more than a reasonable suspicion that Plaintiff was directly involved in the alleged murders. Under the totality of the circumstances, Plaintiff's refusal to answer questions about what she observed in the course of the officers' investigation, when Plaintiff was not under arrest, and other eyewitnesses were cooperating, could only increase the officers' already reasonable suspicion of her direct involvement in the murders.

Moreover, a prosecutor and judge agreed there was probable cause to arrest Plaintiff, as Plaintiff shows by incorporating the Affidavit. The fact charges were eventually dismissed against Plaintiff is not determinative of whether probable cause existed at the time of her arrest. *Delmonico v. Capito*, 356 F. Appx. 144, 149 (10th Cir. 2009) ("the fact that charges were dismissed is not determinative of the issue of probable cause."). In this case, there is more than merely Plaintiff's refusal to answer questions to establish probable cause to arrest her as an accessory. See *Bostick*, 501 U.S. at 437. Accordingly, the Court finds probable cause was present at the time to arrest Plaintiff, and therefore each of her remaining claims fail as a matter of law.

**B. Qualified Immunity**

Qualified immunity shields government officials from civil liability protecting "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To survive a motion to dismiss raising qualified immunity, a plaintiff must show (1) that "the defendant's actions violated a constitutional or statutory right," and (2) "that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008)).

To be clearly established, "[i]t is not enough that a rule be suggested by then-existing precedent", but the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in his specific circumstance. *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11-12 (2021). Plaintiff must identify "an on-point Supreme Court or published Tenth Circuit decision," but may also look to the "weight of authority" from other courts. *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). Furthermore, clearly established law "must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citations omitted).

Finally, "when a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to [qualified] immunity if a reasonable officer could have believed that probable cause existed.

In the instant case, Roden is entitled to qualified immunity. Plaintiff has failed to allege any conduct of Roden that violated a constitutional right of the Plaintiff.[10] Further, Plaintiff's pre-

---

[10] As noted *supra,* the only factual allegation against Roden is that he "directed" someone to arrest Plaintiff. This conclusory allegation is insufficient to show Roden violated Plaintiff's constitutional rights.

arrest, pre-Miranda refusal to cooperate with law enforcement during an ongoing murder investigation in which eyewitnesses implicated her involvement, and where she allegedly cooperated with law enforcement initially, is not a clearly established constitutional right.[11] Finally, the existence of probable cause is sufficient to grant qualified immunity. Therefore, Roden is entitled to qualified immunity as to each of Plaintiff's claims.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint fails to allege sufficient facts to state a claim for relief against Roden in his individual capacity. Plaintiff's First Amended Complaint fails to sufficiently allege Roden was personally involved, that Roden deprived Plaintiff of a clearly established constitutional right, or negate probable cause. Therefore, Roden is entitled to qualified immunity as to each of Plaintiff's claims against him in his individual capacity. Accordingly, the Motion to Dismiss (Docs. 14) is granted.

**IT IS SO ORDERED this 24th day of August, 2022.**

TERENCE C. KERN
United States District Judge

---

[11] See *Koch*, 660 F.3d at 1242-46 ("Thus, at the time of [the plaintiff]'s arrest, it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop.") ("Indeed, [the plaintiff] has pointed to no authority—nor could we find any—clearly establishing a right under the Fourth Amendment to refuse to answer an officer's questions during a *Terry* stop.") ("Accordingly, at the time of [the plaintiff]'s arrest, it was not clearly established that an individual has a Fifth Amendment right to refuse to answer an officer's questions during a *Terry* stop.").